Case: 3:02-cv-00405-bbc   Document #: 29   Filed: 02/24/2003   Page 1 of 7

Document Number Case Number
029                02-C-0405
United States District Court
Western District of Wisconsin
Joseph W. Skupniewitz
Filed/Received
02/24/2003 10:19:00 AM CST

IN THE UNITED STATES DISTRICT COURT
**WESTERN DISTRICT OF WISCONSIN**

_____

PAUL S. HAMMEL,

      Plaintiff,

v.                                              Case No. 02 C 0405 C

EAU GALLE CHEESE FACTORY,

      Defendant.
_____

**PLAINTIFF'S SUMMARY JUDGMENT BRIEF**
_____

**INTRODUCTION**

Plaintiff, Paul Hammel (Hammel), brought this employment discrimination action against Defendant, Eau Galle Cheese Factory, (Eau Galle), under the Americans With Disabilities Act of 1990, (ADA), 42 U.S.C. § 12101 et seq, and the Wisconsin Fair Employment Practices Act. His motion for summary judgment only addresses issues under the ADA. In short, Plaintiff has moved this Court to grant summary judgment in his favor and rule that Eau Galle discriminated against him on the basis of disability in violation of the ADA.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 669 (7th Cir. 2000); and Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, the Court must review the record in the light most favorable to the non-moving party, here Eau Galle, and make all reasonable inferences in its favor. See id. and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

To avoid summary judgment, Eau Galle is required to set forth specific facts showing that a genuine issue for trial exists. See Bekker v. Humana Health Plan, Inc., supra, at 669; and Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). "A genuine issue of fact 'exists only when a reasonable jury could find for

the party opposing the motion based on the record as a whole.'" Bellaver v. Quanex Corp., 200 F.3d 485, 492 (7th Cir. 2000) (quoting Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999)).

## STANDARD FOR DISCRIMINATION UNDER ADA

The ADA prohibits an employer from discriminating against a qualified individual with a disability. See 42 U.S.C. § 12112 (a). The term "qualified individual with a disability" "means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To establish disability discrimination, therefore, Hammel must show that (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) he suffered from an adverse employment decision because of his disability. See Bekker v. Humana Health Plan, Inc., supra, at 670. To prevail, Hammel must establish all three elements of his claim.

## HAMMELS DISABILITY

First, Hammel must establish that he is disabled. To be disabled within the meaning of the ADA, Hammel must demonstrate that he (1) has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102 (2); see also Bekker v. Humana Health Plan, Inc., at 670; and Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1059-60 (7th Cir. 2000). Hammel claims, and Eau Galle admits, that he comes within the first definition of disability because he has a physical impairment, legal blindness, which substantially limits him in the major life activity of seeing. See T. O'Halloran 2/11/03 e-mail to S. LaBarre. Since the parties agree that Hammel is disabled, there is no genuine issue of material fact for trial. Consequently, Plaintiff is disabled within the meaning of the ADA.

## HAMMEL QUALIFIED INDIVIDUAL WITH A DISABILITY

Next, Hammel must show that he can perform the essential functions of his position with or without reasonable accommodation. See 42 U.S.C. § 12111(8). Eau Galle hired Hammel as a general laborer at its factory on January 8, 2000. See Hemmy Depo at 22:5, 56:20, 57:2. Hammel asserts that he could perform the essential functions of the position but Eau Galle never gave him a full opportunity to do so.

Both parties agree that the essential functions of a general laborer are divided into two categories. There are two major parts of the Eau Galle factory, a brine room where the cheese sits in salt-water tanks and a make room where the cheese is processed. In the brine room, Hammel had to load cheese wheels into the brine tanks, remove wheels from the tanks placing them on carts, and stack cheese wheels on pallets. In the make room, the essential functions included filling cheese forms with curd, stacking forms and presses, removing cheese wheels from forms, putting cheese in presses, trimming cheese wheels, and loading cheese wheels on carts. See Eau Galle's Response to ERD Interrogatory No. 4.

The central issue in this case is whether Hammel could perform these functions safely. Safety is the reason Eau Galle gave Hammel for terminating his employment on January 27, 2000, less than three weeks after he was hired. See Eau Galle's Resps. to Interrogatory No. 6 and Hemmy's 1/27/00 note.

During the administrative phase of this case, Hammel propounded various sets of interrogatories to Eau Galle. In his first set, he asked Eau Galle to explain why he was terminated. In response Eau Galle says, "He was unable to safely perform the functions of his job." See Eau Galle's response to Hammel's Interrogatory No. 6. Additionally, Eau Galle believed that Hammel's disability caused the alleged safety concern. See Hemmy's Depo at 61:18-67:7; Hemmy's 1/27/00 note.

Eau Galle argues that Hammel's disability poses a direct threat to his or others' safety. See Defendant's answer to the complaint; 1/27/00 Hemmy note; Hemmy Depo at 61:18-67:7. As a result, according to Eau Galle, he is unable to perform the essential functions of the job. Therefore, we must then examine whether Eau Galle will be able to sustain its assertion that Hammel's disability posed a direct threat to safety.

"The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." See 42 U.S.C. § 12111. A conclusion that Hammel was a direct threat requires an individualized assessment, based on reasonable medical judgment, of his present ability to perform safely the essential functions of his job. The assessment should examine (1) the duration of the risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm. See Bekker v. Humana Health Plan, Inc., supra at 668.

A key element in establishing "direct threat" is demonstrating that a reasonable accommodation will not reduce or eliminate the risk. In this case, Eau Galle admits that it never discussed reasonable accommodations with Hammel. See Hemmy's Depo. at 46: 1-7, 50:8-16, 60; Simpson Depo. at 20:6-24:8; Smith Depo. at 15:17-16:2, 22:25-24:2; Anibas Depo. at 18:24-20:18, 34:1-35:10; Buhlman Depo. at 23. Eau Galle states that it internally discussed whether there was anything it could do to help Hammel, but every Eau Galle witness acknowledges that he has no background or experience with vocational rehabilitation and accommodation issues unique to the blind and visually impaired. See Hemmy Depo. at 61 and 62.

The first time that Hammel ever knew that his disability allegedly caused concern was the day Eau Galle terminated him. See Hemmy Depo. at 59; Simpson Depo. at 20:6-24:8; Smith Depo. at 15:7-16:2, 22:25-24:2; Anibas Depo. at 18:24-20:18, 34:1-35:10. If approached before his termination, Hammel would have been more than willing to discuss accommodations and ways in which concerns about his disability could have been addressed. See 9/21/00 letter from S. LaBarre to Mark Robarge (Wisconsin Department of Workforce Development, Equal Rights Division (ERD)); see also Hammel Responses to ERD Questions 6, 9, &10.

During the time Hammel worked at Eau Galle he did not sustain any significant injury. The only evidence of injury in the record is that Hammel scraped his knuckles a few times. See Hammel's Depo 70:22-71:7. There is absolutely no evidence that Hammel injured anyone else. See Davis Depo. at 14. Eau Galle rested solely on its fears that either Hammel or someone else would get hurt. See Hemmy Depo. 59-65; Simpson Depo at 15:17-16:2, 22:25-24:2; Anibas Depo. at 18:24-20:18, 34:1-35:10.

Eau Galle cannot demonstrate that Hammel's disability posed a direct threat to his or others' safety. The ADA requires an individualized assessment of the risk based on reasonable medical judgment. See Bekker V. Humana Health Plan, Inc., supra at 668. There is no evidence that Eau Galle conducted such an

assessment. Consequently, Eau Galle cannot maintain its assertion that Hammel posed a direct threat and thereby could not perform the essential functions of the job.

Beyond the safety issue, Hammel performed the tasks and duties asked of him. See Hammel's Depo. at 74:22-75:13. Alleged safety concerns are the only reasons Eau Galle proffers for Hammel's termination. See Hemmy Depo. 59-65; Simpson Depo at 15:17-16:2, 22:25-24:2; Anibas Depo. at 18:24-20:18, 34:1-35:10. Because Eau Galle cannot demonstrate that safety represents a legitimate ground for Hammel's termination, Hammel has demonstrated that he performed the essential functions of a general laborer at Eau Galle.

## ADVERSE EMPLOYMENT ACTION BASED ON DISABILITY

Under the ADA, an employee has available two methods for establishing that his employer discriminated against him based on his disability. See Bekker v. Humana Health Plan, Inc., supra at 670; and Cheek v. Peabody, 97 F.3d 200, 203 (7th Cir. 1996). First, the employee "may present direct or circumstantial evidence that the employment decision was motivated by the employer's discriminatory animus." Bellaver, 200 F.3d at 492; see also DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995). Second, the employee may use the burden-shifting method set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), to prove by indirect evidence that his employer intentionally discriminated against him. See Robin, 200 F.3d at 1088; DeLuca, 53 F.3d at 797.

"Evidence of discrimination may be direct or circumstantial." Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999). Direct evidence is evidence that "'in and of itself suggests' that someone with managerial authority was 'animated by an illegal employment criterion.'" Id. (quoting Venters v. City of Delphi, 123 F.3d 956, 972 (7th Cir. 1997)). "When the employee has presented evidence that the employer was motivated in part by discrimination, the defendant may then avoid a finding of liability by proving that it would have made the same decision absent discrimination." Bellaver, 200 F.3d at 492. To survive a motion for summary judgment, therefore, Eau Galle must present sufficient evidence to allow a rational jury to reasonably conclude that Eau Galle would have made the same employment decision even if Hammel did not have a disability. See Bekker v. Humana Health Plan, Inc., at 671.

Even if safety concerns were not the only proffered reason for termination from Eau Galle, Eau Galle never gave Hammel a chance to perform the essential functions of his job with accommodations. To come under its protection, the ADA requires that a qualified individual with a disability perform the essential functions of the job with or without reasonable accommodations. See 42 U.S.C. § 12111(8). As stated previously, the first time that Hammel heard of any concerns regarding his legal blindness as it affected his employment was on the day he was terminated. Eau Galle gave him absolutely no opportunity to discuss possible solutions or to explore accommodations that would have addressed performance or safety issues.

"An employer discriminates against a qualified individual with a disability by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." See 42 U.S.C. § 12112(b)(5)(A). In the present case, there is no evidence that Eau Galle engaged Mr. Hammel in the process of considering accommodations. Since Eau Galle never placed the topic of accommodations on the table for discussion with Hammel, Eau Galle violated the specific terms of the ADA.

Hammel has demonstrated above that Eau Galle's only proffered reason for termination was safety as related to his disability. Hammel has also shown that Eau Galle cannot maintain its contention that his employment posed a direct threat to anyone's safety. Additionally, Hammel has shown that Eau Galle made no effort to engage him in discussions about reasonable accommodations. Therefore, unsubstantiated concerns about Hammel's disability remain the only reason for his termination. Such a reason is unlawful and evidences intentional violation of the ADA.

## CONCLUSION

Even when viewing the record in the light most favorable to Eau Galle, Hammel has demonstrated that:

1. He is an individual with a disability within the meaning of the ADA.
2. He is able to perform the essential function of the general laborer job with or without reasonable accommodations.

    3.    Eau Galle based its decision to terminate him upon his disability.

Therefore, under Rule 56 of the Federal Rules of Civil Procedure, Hammel prays that this Court enter summary judgment in his favor.

Dated:  February 24, 2003                                           **FLYNN, GASKINS & BENNETT, L.L.P.**


_____
Sonia Miller-Van Oort
333 South Seventh St., Suite 2900
Minneapolis, MN 55402
Telephone: (612) 333-9500
Facsimile: (612) 333-9579

AND

**LABARRE LAW OFFICES, P.C.**

Scott C. LaBarre
Attorneys for the Plaintiff
1660 S. Albion, Suite 918
Denver, CO 80222
303-504-5979

*Attorneys for Plaintiff*