Document Number Case Number
030 02-C-0405
United States District Court
Western District of Wisconsin
Joseph W. Skupniewitz

Filed/Received
02/24/2003 10:19:00 AM CST

IN THE UNITED STATES DISTRICT COURT
**WESTERN DISTRICT OF WISCONSIN**

---

PAUL S. HAMMEL,

    Plaintiff,

v.                                       Case No. 02 C 0405 C

EAU GALLE CHEESE FACTORY,

    Defendant.

---

### PLAINTIFF'S PROPOSED FINDINGS OF FACT

---

**I.    JURISDICTION & PROCEDURAL HISTORY**

    1.    Eau Galle Cheese Factory ("Eau Galle") is a Wisconsin corporation in the business of manufacturing hard Italian cheese. See Resp.'s Answs. to Interog. & Req. for Prod. at Interog. No. 1 & 14. attached as Ex. A.

    2.    At all relevant times hereto, Defendant has continuously been an employer engaged in an industry affecting commerce as defined under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h). See Answer at ¶ 8.

    3.    All acts complained of in this lawsuit occurred in Durand, Wisconsin. See Answer at ¶ 4.

    4.    At all relevant times, Eau Galle employed approximately 27 people. See List of Employees, attached to Resp.'s Answ. to Plt.'s First Set of Interogs & Req. for Prod. at Ex. A.

5. Although Plaintiff Paul Hammel now hales from Minnesota, at the time of the occurrences which lead to this case, he lived in Arkansas, Wisconsin. See 5/21/01 Hammel Depo. at ___, attached as Ex. B; see also Hammel's 2/1/01 Resps. to Interogs & Req. for Prod. at No. 2, attached as Ex. C.

6. This Court has federal subject matter jurisdiction of Plaintiff's Americans With Disabilities Act ("ADA") claims. See 28 U.S.C. § 1345.

7. This Court also has supplemental jurisdiction of Plaintiff's Wisconsin law claims. See 28 U.S.C. § 1367.

8. Plaintiff originally filed his charge of employment discrimination with the Wisconsin Department of Workforce Development Equal Rights Division, (ERD), on February 17, 2000. See Discrimination Complaint, attached as Ex. D.

9. The ERD issued a finding of "no probable cause" on October 5, 2000. See 10/5/00 Initial Determination, attached as Ex. E.

10. Hammel appealed the ERD's finding of "no probable cause." See 11/3/00 letter from S. LaBarre to ERD, attached as Ex. F.

11. On April 5, 2001, Judge Olstad of ERD reversed the original finding and enter a finding of "probable cause" that Eau Galle Cheese Factory had discriminated against Hammel on the basis of his disability. See 4/15/01 Notice Regarding Appeal Rights & Decision and Order, attached as Ex. G.

12. The parties could not come to agreement on a resolution of the matter, and Plaintiff obtained a dismissal of his charge from ERD and then requested a ruling from the Equal Employment Opportunities Commission, (EEOC) on August 30, 2001. See 8/15/01 Order of Dismissal, attached as Ex. H.

13.     On March 29, 2002, EEOC also issued a finding of reasonable cause to believe that Hammel had suffered discrimination based on his disability. See 3/29/02 C. Bailey Determination, attached as Ex. I.

14.     The EEOC took no further action on the matter and gave Hammel a right to sue letter on April 19, 2002.  See 4/19/02 letter from EEOC to P. Hammel, attached as Ex. J.

**II.     PLAINTIFF PAUL HAMMEL'S DISABILITY**

15.     Hammel was born on September 8, 1950.  See Hammel's 2/1/01 Resps. to Interogs & Req. for Prod. at Interog No. 2, attached as Ex. C.

16.     At age ___ Doctors removed Hammel's right eye, eliminating his ability to use his right eye for any sight.  See Hammel Depo. at ___, at Ex. B; see also Compl.'s Resps. to 2nd Set of Interogs. & Req. for Prod. at Interog. No. 1, attached as Ex. K.

17.     Hammel had virtually normal vision in his left eye until 1991 when congenital glaucoma caused him a highly restricted, narrow corridor of visual field of less than twenty degrees.  See 12/23/96 letter from Dr. D. Johnson, attached as Ex. L; see also Compl.'s Resps. to 2nd Set of Interog. & Req. for Prod. at Interog. No. 1, at Ex. K.

18.     Because of the extremely restricted field in the one eye and the complete lack of vision in the other, Hammel meets the definition of legal blindness.  See 12/23/96 letter from Dr. D. Johnson, at Ex. L;  12/23/02 Expert Report of Dr. T. Theune, attached as Ex. M..

19.     Hammel has qualified for Social Security Disability due to his visual impairment since November 1990.  See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 8, at Ex. C.

20.By virtue of his legal blindness, Hammel has a physical impairment which substantially limits him in the major life activity of seeing. See 12/23/96 letter from Dr. D. Johnson, at Ex. L; 12/23/02 Expert Report of Dr. T. Theune, at Ex. M..

21.The parties have stipulated that Hammel is an individual with a disability within the meaning of the American with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. See 2/11/03 Letter from S. LaBarre to C. Dittman & T. O'Halloran, attached as Ex. N; see also 2/13/03 email from T. O'Halloran to S. LaBarre, attached as Ex. O.

### III.PLAINTIFF PAUL HAMMEL'S EMPLOYMENT HISTORY BEFORE EMPLOYMENT WITH EAU GALLE CHEESE FACTORY

22.Starting in 1991 to approximately 1992, Mr. Hammel was self-employed as a General Laborer doing such jobs as General Maintenance, Landscaping and Painting. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

23.In late 1992, Mr. Hammel worked for Wabasha County Development Achievement Center as a maintenance employee. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

24.Mr. Hammel also worked as a general aide to Wabasha County Development Achievement Center's clients who were mentally and developmentally disabled. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

25.In late 1994, Mr. Hammel became a student at BLIND, Inc. in Minneapolis, Minnesota. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C..

26.Hammel received vocational rehabilitation training for the blind at BLIND, Inc. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

27. In late 1995 or early 1996, Mr. Hammel moved back to Wabasha and worked for Fisk Enterprises doing general labor and construction work on several buildings in the Wabasha area. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

28. Hammel performed landscaping, painting, and other general labor jobs at Fisk Enterprises. See Plt.'s Resps. to Interog. & Req. for Prod. at No. 3, at Ex. C.

29. In the fall of 1997, Mr. Hammel moved to Rochester, Minnesota to work for Sears as a replenishment employee. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

30. Hammel's responsibilities at Sears as a replenishment employee included doing general store work such as unloading delivery trucks, stocking shelves, and other general warehouse type work. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

31. In early 1999, Mr. Hammel went to work for Ability Building Center at IBM in Rochester, Minnesota. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

32. Hammel's responsibilities at Ability Building Center were to supervise a crew of inside couriers. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

33. Hammel worked at Ability Building Center through the month of October, 1999. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

34. In early November 1999, Hammel went to work for Schlosser Lumber, Inc. in Durand, Wisconsin, doing general labor work such as stacking lumber. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3, at Ex. C.

35. Hammel worked at Schlosser Lumber, Inc. until he went to work for Defendant Eau Galle Cheese Factory ("Eau Galle") in early January of 2000. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No. 3 at Ex. C.

36. Prior to working for Eau Galle, Hammel had never been placed in a permanent work restriction due to his disability. See Plt.'s Resps. to Interog. & Req. for Prod. at Interog. No.7, at Ex. C.

37. Prior to working for Eau Galle, Hammel had never been denied employment or released from employment as a result of his legal blindness. See Plt.'s Resps. to 2nd Set of Interog. & Req. for Prod. at No. 2, at Ex. K.

**IV.  PLAINTIFF PAUL HAMMEL'S RELATIONSHIP WITH EAU GALLE CHEESE FACTORY**

38. During all times relevant to this case, Mr. Ron Hemmy ("Hemmy") served as Eau Galle's business manager. See Hemmy Depo at 6:24-7:2, attached as Ex. P.

39. When Hammel learned of Eau Galle Cheese Factory in Durand, Wisconsin, he called the company and requested an application from Hemmy. See Hammel Depo at 51:9-12, at Ex. P.

40. Hemmy informed Hammel during this initial telephone conversation that that there were no jobs available at that time, but Hemmy sent Hammel an application for future use.

6

41.     Hammel filled out the application in early 2000 and dropped it off with Eau Galle.  See Hammel Depo. at 51:9-12, at Ex. B;  see also Application for Employment.

42.     When Hammel visited the plant for the first time in early January 2000, Hemmy and Hammel met to discuss an available position at Eau Galle.  See Hammel Depo. at 53:16 – 56:11, at Ex. B

43.     Hemmy described the available the job to Hammel as one for "general laborer."  See Hammel Depo at 53:16 – 56:11, at Ex. B

44.     At the time of this meeting, Hammel explained to Hemmy his employment background and how he qualified for the position.  See Hammel Depo at 53:16 – 56:11, at Ex. B.

45.     At this same meeting, Hammel discussed his legal blindness and explained to Hemmy how he was able to work with his disability.  See Hemmy Depo at 13:1 – 15: 2, at Ex. P and Hammel Depo at 53:16 – 56:11, at Ex. B; See also Resp.'s Answs. to Interog. & Req. for Prod. at Interog. No. 5, attached as Ex. Q.

46.     After Hemmy learned of Hammel's disability, Hemmy said that he wanted to discuss Hammel's condition with his plant supervisors.  See Hemmy Depo. at 17: 9-12, at Ex. B.

47.     Hemmy advised Hammel that he would speak with him again later.  See Hemmy Depo. at 17: 9-12, at Ex. P.

48.     On or about January 7, 2000, Hemmy called Hammel to inform him that Eau Galle wanted to hire him.  See Hemmy Depo. at 22:5, 56:20, 57:2, at Ex. P.

7

49. On January 8, 2000, Hammel arrived for his first day of work at Eau Galle. See Hemmy Depo. at 22, at Ex. P.

50. At the beginning of Hammel's first day at Eau Galle, he attended a meeting with Hemmy where general procedures and expectations were discussed. See Hemmy Depo. at 22-25, at Ex. P.

51. After this initial meeting with Hemmy, Hammel met with Mr. John Anibas ("Anibas"), a plant supervisor, for orientation and to start work. See Hemmy Depo. at 30:20 – 31:1, at Ex. P

52. For the position of general laborer at Eau Galle—the position for which Hammel was hired—Hammel had to fulfill the following essential job functions: filling cheese forms with curd; stacking and unstacking forms and presses; removing cheese wheels from forms; putting cheese in presses; trimming cheese wheels; and loading cheese wheels onto carts. See Resp.'s Answs. to Interog. & Req. for Prod. at Interog. No. 4, at Ex. A; See also Eau Galle's Response to ERD Interrogatory No. 4, attached as Ex. R.

53. Also as part of his general laborer position, Hammel was expected to perform the following essential function in the factory's brine room: load cheese wheels into the brine tanks, remove wheels from the tanks and place them on carts, and stack cheese wheels on pallets. See Resp.'s Answs. to Interog. & Req. for Prod. at Interog. No. 4, at Ex. A.

54. Prior to his termination, however, no one ever informed Hammel that if he did not improve his job performance, he would be terminated. See Hammel Depo. Trans. at 64:13-24, at Ex. B.

55.     Prior to his termination, no one from Eau Galled ever discussed the potential of Hammel injuring himself or others in carrying out his job duties.  See Hemmy Depo at 59:9-13 at Ex. B.; Simpson Depo. at 20:6-24:8, attached as Ex. S; Smith Depo. at 15:17-16:2, 22:25-24:2, attached as Ex. T; Anibas Depo. at 18: 24-20:18, 34:1-35:10, attached as Ex. U.

56.     Hammel never asked for an accommodation by Eau Galle, because he did not know that there was concern relating to his job performance or consequently that any accommodation was necessary.

57.     Eau Galle claims that none of its representative ever discussed their safety concerns with Hammel, because they "did not feel that there was any way that [they] could change things or accommodate [Hammel] that would help his exposure."  See Hemmy Depo at 59:15-18 at Ex. P; cf. also Simpson Depo. at 20:6-24:8 at Ex. S; Smith Depo. at 15:17-16:2, 22:25-24:2 at Ex. T; Anibas Depo. at 18: 24-20:18, 34:1-35:10 at Ex. U.

58.     Mr. John Buhlman, the owner of Eau Galle Cheese, believed that it would be of no use discussing possible accommodations with Hammel himself, because, he "could not make [Hammel] see" and "that was the problem."  See Buhlman Depo at 23, attached as Ex. V.

59.     Neither Hemmy nor any other representative from Eau Galle ever asked Hammel, or any other outside source, whether any accommodations could be made to assist a visually-impaired individual with working in the Eau Galle plant.  See Hemmy Depo. at 50:8-16 at Ex. B; see also .Hemmy Depo. at 46:1-7 at Ex. P; Simpson Depo. at

9

20:6-24:8 at Ex. S ; Smith Depo. at 15:17-16:2, 22:25-24:2 Ex. T; Anibas Depo. at 18:24-20:18, 34:1-35:10 at ex. U.

60. At the time Hammel worked at Eau Galle, none of Eau Galle's management personnel had ever had any experience in the area of blindness; nor did they know blind people other than Hammel. See Hemmy Depo at 59:22-60:4.

61. At the time Hamel worked at Eau Galle, none of Eau Galle's management personnel had any knowledge or experience with accommodations for the blind. See Hemmy Depo at 59:22-60:15.

62. Notwithstanding management's lack of knowledge or information regarding blind individuals or possible accommodations for them in the work setting, Hemmy, three supervisors, and the company's owner met on January 26, 2000 and decided that it would be in "the best interest of [Hammel] and probably Eau Galle Cheese if [Eau Galle] would terminate [Hammel's] employment." See Hemmy Depo. at 63:24-64:2; see also Buhlman Depo at 21-24.

63. Hammel would have been receptive to discussing accommodations if he would have been given an opportunity to do so. See 9/21/00 letter from S. LaBarre to Mark Robarge (Wisconsin Department of Workforce Development, Equal Rights Division (ERD)), attached as Ex. W; see also Hammel Responses to ERD Questions 6, 9, & 10.

**V.    EAU GALLE CHEESE FACTORY'S TERMINATION OF PLAINTIFF PAUL HAMMEL**

64. On January 27, 2000, Hemmy called Hammel into his office at the end of the day.

65. At this January 27, 2000 meeting, Hemmy told Hammel that he and the supervisors had concerns that Hammel's disability would lead to an injury on the job either to Hammel or others.  See Hemmy Depo at 56-58.

66. Hemmy advised Hammel that, although he was a good worked with a good work ethic, it was necessary to terminate Hammel given the company's safety concerns  See Hemmy Depo at 56-58.  see also Plt.'s Resps. to Interog. & Req. for Prod. at No. 11; See Resp.'s Answs. to Interog. & Req. for Prod. at Interog. No. 6.

67. Hammel asked Hemmy to identify Eau Galle's specific safety concerns.

68. Hemmy did not provide Hammel with any specific safety concerns that Eau Galle had about his continued employment in the plant.  See Hammel Depo. at 78:3-15.

69. The only written record of the January 27, 2000 meeting between Hemmy and Hammel is a note that Hemmy jotted down at the time of the meeting.  See Hemmy Depo. at 66:7-10;  see also 1/27/00 Memo of R. Hemmy.

70. That note says in part:

> "Advised Paul that we had concerns about his employment.
> I explained that because of his vision impairment, all three
> supervisors said that it did interfere to some extent with his
> work, but of more concern was for his safety and the safety
> of his fellow employees."

See handwritten note at Ex. X.

71. After the termination meeting of January 27, 2000, Hemmy told Hammel's former wife, Tammy Hammel, that Paul had been terminated due to the safety concerns. See Hemmy Depo. at 71:5-24 at Ex. B;  see also 1/31/00 Memo from R. Hemmy to file, attached as Ex. Z.

11

72. Eau Galle has further admitted in deposition testimony that Hammel's disability constituted its primary concern and reason for terminating Hammel. See Hemmy Depo. at 59-65; Simpson Depo. at 20:6-24:8; Smith Depo. at 15:17-16:2, 22:25-24:2; Anibas Depo. at 18: 24-20:18, 34:1-35:10.

73. On February 3, 2000, after terminating Hammel, Hemmy wrote a letter to "whom it may concern" indicating Hammel's past wages and the fact that Eau Galle terminated Hammel due to "non disciplinary reasons." See 2/3/00 "To Whom It May Concern" letter from R. Hemmy; see also Hemmy Depo. at 69:1-22, attached as Ex. AA.

## VI. THIS LAWSUIT

74. Hammel brought this suit against Eau Galle under Title I of the Americans with Disabilities Act of 1990 (ADA), Title I of the Civil Rights Act of 1991, and the Wisconsin Fair Employment Practices Act, on July 17, 2002. See Complaint.

75. As an affirmative defense, Eau Galle claims that it provided reasonable accommodations to Hammel.

76. As an affirmative defense, Eau Galle claims that Hammel posed a "direct threat" to his and others' safety.

77. As an affirmative defense, Eau Galle claims that Hammel did not perform the essential functions of his position.

78. As an affirmative defense, Eau Galle claims that Hammel has not mitigated his damages.

## VI. EXPERT RICHARD C. DAVIS

79. Hammel has disclosed Mr. Richard C. Davis ("Davis") as an expert in this case. See Plt.'s Expert Disclosures, attached as Ex. BB.

80.     Davis has obtained information regarding Hammel's employment history from Hammel and his former employers. See Plt.'s Resp. to 3rd Set of Interogs. and Req. for Prod. at No.2; see also R. Davis Interview Notes

81.     Davis concludes that Eau Galle discriminated against Hammel based on his disability of legal blindness for the following reasons:

    a.     Unlike other employees, Eau Galle gave Hammel an unlimited probationary period. See Davis Depo. at 13:7-10, at Ex. CC.

    b.     Eau Galle failed to discuss any of its concerns regarding the effect of Hammel's disability on his job performance. See Davis Depo. at 13:10-18, at Ex. CC.

    c.     Eau Galle never offered any reasonable accommodations to Hammel in the performance of his job, nor did Eau Galle even broach the topic of reasonable accommodations with Hammel.. See Davis Depo. at 13:10-15:4, Ex. CC.

    d.     Hammel was never given an opportunity to respond to any complaints or allegations relating to his disability and its effect on his ability to carry out the essential functions of his job. See Davis Depo. at 13:10-18, at Ex. CC.

    e.     There were no reports or workers compensation records indicating that Hammel or others had been hurt by Hammel's employment at the plant. See Davis Depo. at 13:19-15:4, at Ex. CC.

    f.     Eau Galle informed Hammel himself that he was discharged due to his disability. See Davis Depo. at 1-15, at Ex.CC.

Dated: February __, 2003.                **FLYNN, GASKINS & BENNETT, L.L.P.**

 

_____
Sonia Miller-Van Oort
333 South Seventh St., Suite 2900

Minneapolis, MN 55402
Telephone: (612) 333-9500
Facsimile: (612) 333-9579

AND

**LABARRE LAW OFFICES, P.C.**

Scott C. LaBarre
Attorneys for the Plaintiff
1660 S. Albion, Suite 918
Denver, CO 80222
303-504-5979

*Attorneys for Plaintiff*

14