Case: 3:02-cv-00405-bbc   Document #: 40   Filed: 03/14/2003   Page 1 of 8

Document Number: 040
Case Number: 02-C-0405
United States District Court
Western District of Wisconsin
Joseph W. Skupniewitz
Filed/Received
03/14/2003 02:36:25 PM CST

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

PAUL HAMMEL,

      Plaintiff,

vs.                                                                    Case No. 02 C 0405 C

EAU GALLE CHEESE FACTORY,

      Defendant.

---

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT

---

### INTRODUCTION

Plaintiff Paul Hammel has failed to identify a genuine issue of material fact that is in dispute in this matter, and Defendant Eau Galle Cheese (EGC) has shown it is entitled to judgment as a matter of law.

### ARGUMENT

**I.   PLAINTIFF IS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY.**

    **A.   Plaintiff cannot perform the essential functions of the job.**

Plaintiff agrees with EGC as to what the essential functions of the job were. However, Plaintiff predictably, and self-servingly, denies that he was unable to perform the essential functions of the job. To the contrary, Hammel was observed by co-workers and supervisors alike being unable to perform tasks he concedes were essential. Hammel was rotated among job areas so that the supervisors could determine what tasks Hammel could perform, but he proved unable and/or unwilling to properly perform many of the tasks. In his new affidavit, Hammel lists all the tasks EGC showed he could not do, and then states generally that EGC's evidence is over-

exaggerated or untrue. This general statement, which does not even specifically deny his inability to perform the tasks, is insufficient to raise an issue of fact in the face of EGC's specific evidence of Hammel's inability to perform the tasks.

Moreover, affidavits such as Hammel's in this case are not competent to create a genuine issue of material fact to avoid summary judgment. *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999) Self-serving affidavits without factual support in the record are insufficient to defeat a motion for summary judgment. *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir.1998). Hammel's affidavit lacks support in the record. EGC, on the other hand, has provided deposition and affidavit evidence from Hammel's co-workers and supervisors , which is corroborated by deposition and affidavit evidence from other co-workers and supervisors.

Hammel states that he was never told his job was in danger, but his knowledge or lack thereof has no bearing on his actual ability to do the job. Hammel cannot raise an issue of material fact about these matters by arguing he was unaware of the problems. Whether he was told about deficiencies is beside the point. The question is whether he was capable of performing the job, and EGC has shown he was not.

**B.     Plaintiff presented a direct threat to the safety of himself and others.**

Plaintiff essentially argues that because he never caused injury, there was no threat of injury. The fact that a serious safety disaster has not happened yet is no reason to disallow an employer from eliminating a safety threat. The standard in analyzing direct threat illustrates this fact, in that it dictates consideration of the duration of the risk, the nature and severity of the potential harm, the likelihood that the harm will occur, and the imminence of the harm. *Emerson*

*v. Northern States Power Co.*, 256 F.3d 506, 514 (7th Cir. 2001). Thus, although EGC's argument regarding imminence and likelihood would surely be stronger if a disaster had already occurred, the fact that one had not does not greatly assist Hammel's position.

Plaintiff again puts forth self-serving denials, this time with regard to whether he posed a safety hazard. The evidence shows, however, that he frequently bumped and jostled others and caused others to waste time and energy avoiding collisions with him, that he used the grinder and his knife in a dangerous fashion, that he suffered several minor injuries at work, that he ran a jack into the wall, and that he had already injured himself more frequently than others on the job. Hammel alleges that he was not aware of the safety problems he caused. However, even if Hammel was ignorant of the problems, that does not negate the fact that they existed, nor does it erase the employer's right to eliminate safety hazards.

Hammel argues that EGC did not conduct an analysis of his abilities and of safety issues with regard to his performance of the job. However, EGC indeed did conduct an analysis of Hammel's ability to do the job and to do it safely, by observation in the workplace by other employees and supervisors, and by testing his ability to do various jobs in the plant. Hammel does not deny that EGC performed this internal analysis, merely suggests that it was required to do more, such as hire an outside consultant. The law does not impose a duty to hire an outside consultant. Moreover, EGC submits that its internal staff were more qualified to analyze Hammel in the workplace, due to their ability to observe him daily and their intimate knowledge of the workings of the plant.

      **C.    There was no reasonable accommodation available that would have allowed Plaintiff to safely perform the essential functions of the job.**

EGC attempted to accommodate Hammel's disability in the workplace in order to enable him to safely perform the essential functions of the job. Hammel suggests that EGC's failure to consult with him during its attempts to accommodate him render its efforts unreasonable. However, even if EGC is found not to have engaged in the interactive process, an employer's failure to engage in the interactive process is not a violation of the ADA. *Emerson* at 515. For liability to be imposed, the employee has the burden to show that (1) the employer caused the interactive process to break down, and (2) that a reasonable accommodation existed. *Mays v. Principi,* 301 F.3d 866, 870 (7th Cir.2002). The burden remains on the employee to show that a reasonable accommodation was possible. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563-64 (7th Cir.1996).

Hammel suggests a list of accommodations that he speculates may have helped him on the job. However, for the reasons stated below, the suggestions would not enable Hammel to safely perform the essential functions of the job. *See also*, 3-14-03 Affidavit of Ron Hemmy.

First, it is suggested that Hammel be limited to manual power jacks in order to avoid running into walls (or people or other equipment). However, all employees use power jacks, and additionally, Hammel's misuse of the power jack is indicative of a similarly serious risk that people or equipment would be harmed if even he used only manual jacks

Second, it is suggested that Hammel (and others) should use a pestle to push cheese into the grinder. The problem with the cheese grinder, however, did not show a problem solely related to Hammel's disability. Instead, it showed Hammel's uncooperativeness in complying

with orders from supervisors and co-employees and his recklessness with regard to safety. Hammel's vision impairment should not have prevented him from feeling how far into the grinder his hand was. He refused to listen to those telling him not to put his hand so far into the grinder, thus, it is probable that he would refuse to listen to those telling him to use a pestle to push cheese into the grinder.

Third, Hammel suggests that others must call out whenever moving near or behind others. This is impractical. The evidence shows that the employees are constantly moving in close proximity to one another in the make room, such that calling out would be constant and thus, ineffectual, not to mention overburdensome to fellow employees. Moreover, other employees would not always see Hammel coming when he would bump into them, thus, the calling out solution would not work in that situation.

Fourth, Hammel suggests that he could have run his hands along the cheese stacks to make sure they were aligned. This technique may have been necessary for a totally blind employee, but Hammel, with his 20-degree field of vision and good acuity within that range, should have been able to look the stacks straight on to check for proper stacking, had he been attentive to his job. This issue again points up Hammel's carelessness on the job and begs the question of the source of the uneven stacking problem.

Fifth, Hammel puts forth a suggestion that does not make sense with regard to cheese turning because the cheese needs to be flipped. In any event, Hammel's problem in this area does not point up a concern with supervision, as suggested by Hammel, rather, is suggests a problem with Hammel not being thorough in his job. EGC told Hammel he should take his time

to do the job right, which should have been a sufficient accommodation to solve his deficiencies in cheese turning.

Sixth, with regard to cheese stamping, Hammel suggests the problem was bad supervision rather than careless work. He states that it is "easy" to use one hand to find a cheese and the other to stamp it. If this is so common-sensical, why didn't Hammel know to do so? Hammel's suggestion that someone should have been checking his work with regard to stamping is unreasonable, in that it would take almost as much time to check the stamps as to stamp the cheese in the first place.

Seventh, Hammel suggests someone should have told him to shuffle his feet to avoid tripping over hoses, and that the hoses should be removed in any event. The hoses are there for cleaning purposes and are used constantly. It would be unreasonable and time-consuming to put them away and take them out again every time a cart, tray table, or floor area needed to be cleaned.

Eighth, Hammel suggests that he should have been told to hold his hand over his face when bending over to avoid bumping his head. Presumably, Hammel would have done this already if he knew he was in danger of bumping his head,[1] and this remedy would have been ineffectual unless the only time he bumped his head was when bending over. In any event, Hammel would likely have needed to use his hands to hold cheeses while bending over.

---

[1] The level of metaphorical hand-holding suggested in some of Hammel's proposed "accommodations" is astounding. To suggest to someone who presumably has his own common sense, after he has tripped, that he shuffle his feet to avoid tripping again, or that he hold his head to avoid bumping it, seems almost insanely patronizing.

Ninth, Hammel suggests that he should have been told to slow down and call out when moving about to solve problems with bumping into others. It is questionable whether this would have minimized collisions. More importantly, Hammel indeed was told to slow down, and did not do so. Further, as noted above, the level of activity in the make room makes it impractical and likely ineffective to call out each time you are carrying something heavy or moving an item.

In addition to the unworkability and ineffectiveness of Hammel's proposed accommodations, there are problems with Hammel's ability to safely perform the essential functions of the job that Hammel does not suggest any remedy for, including, with regard to essential functions, his tendency to leave cheeses hanging off the edges of the carts, his failure to turn all the cheeses in the brine tank, and his inability to properly trim the cheeses. With regard to the safety issues, Hammel's proposals do not address his stumbling other than over hoses, his bumping into equipment, his causing others to bump each other in order to avoid him, his causing others to waste time and energy avoiding collisions with him, his failure to keep an effective lookout when moving the cheeses from place to place, his heavy dropping of cheeses, and his carelessness in knife handling.

Hammel was not a qualified individual, because there was no reasonable accommodation that would have enabled him to perform all the essential functions of the job, or perform the job without posing a significant threat to the health and safety of others.

## CONCLUSION

EGC knew from the outset that Hammel had significant vision restrictions, and wanted to employ him. EGC took numerous extraordinary measures in its attempt to accommodate Hammel and integrate him into the workplace as a productive employee. However, Hammel's

issues with getting along with and taking direction from other employees made it difficult to accommodate him, and the problems that surfaced with regard to his ability to perform the job's functions, and perform them in a way that kept him and his co-workers safe, made the employment relationship impossible to continue.

Based on the above, and on all the filings herein, EGC respectfully requests that this Court grant its motion for summary judgment in this matter.

Dated this 14th day of March, 2003.

                              **GARVEY, ANDERSON, JOHNSON,**
                               **GERACI & MIRR, S.C.**

                              Carol S. Dittmar
                              State Bar No. 1017344
                              Teresa E. O'Halloran
                              State Bar No. 1031029
                              Attorneys for Defendant, Eau Galle Cheese Factory

P.O. Address:
402 Graham Avenue
P.O. Box 187
Eau Claire, WI 54702-0187
Telephone: 715-834-3428
Facsimile: 715-834-9240